UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JOSE R. VILLAVICENCIO,

        Appellant,   :     Case No. 2:22-cv-0918

  v.     (Bankruptcy Appeal)
    Bankr. Case No. 19-52861

MYRON N. TERLECKY,     Judge Sarah D. Morrison
TRUSTEE,   :

        Appellee.

**OPINION AND ORDER**

This matter is on appeal from the Bankruptcy Court. Chapter 7 debtor Jose Villavicencio claimed certain property in his bankruptcy estate was exempt under Ohio law, but Chapter 7 trustee Myron Terlecky objected to the exemptions. The Bankruptcy Court found such property was not exemptible. *In re Villavicencio*, 635 B.R. 486 (Bankr. S.D. Ohio 2022) ("Bankruptcy Opinion"). For the reasons set forth below, the Bankruptcy Court's findings are **AFFIRMED,** and the appeal is **DISMISSED**.

I.     **JURISDICTION**

This Court has jurisdiction to hear bankruptcy appeals under 28 U.S.C. § 158(a). A bankruptcy court's order denying a claim of exemption is a final, appealable order. *In re Cottrell*, 876 F.2d 540, 542 (6th 1989).

## II. STANDARD OF REVIEW

A bankruptcy court's findings of fact must be upheld unless clearly erroneous. *In re Downs*, 103 F.3d 472, 476–77 (6th Cir. 1996); *In re Southern Indus. Banking Corp.*, 809 F.2d 329, 331 (6th Cir. 1987). A bankruptcy court's conclusions of law are reviewed *de novo*. *Downs*, 103 F.3d at 476–77; *Stephens Indus. Corp., Inc. v. McClung*, 789 F.2d 386, 389 (6th Cir. 1986).

## III. THE BANKRUPTCY COURT PROCEEDINGS

The parties do not dispute the Bankruptcy Judge's findings of fact, and the Court finds no clear error on the record. As such, the excerpted summary of facts from the Bankruptcy Opinion is repeated (including footnotes in the original) and adopted for purposes of this appeal:

> On May 1, 2019 ("Petition Date"), Villavicencio filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. As of the Petition Date:
>
> - Villavicencio was the sole member of JRV SEPIRA LLC, an Ohio limited liability company ("LLC"). [Motion to Deem Facts Admitted as Against Debtor (Doc. 68)[1] ("Admissions Motion")] at 14 (Admission No. 2);
>
> - The LLC owned multiple parcels of real property, *id.* at 15 (Admission No. 6); [Hearing Transcript (Doc. 96) ("Hr'g Tr.")] at 26;
>
> - The LLC generated income by renting the properties; Hr'g Tr. at 33–34;
>
> - The LLC was buying one parcel of real property located at 3339 Daglow Road, Columbus, Ohio ("Daglow Property") from an individual named Joseph F. Miccio on a land contract that

---

[1] All references to the docket in this fact excerpt are to the Bankruptcy Court's docket, Bankr. Case No. 19-52861, and the Court has reviewed and considered the docket entries designated as part of the record on appeal (*see* ECF Nos. 3, 6, 7, 15).

2

was recorded with the Franklin County Recorder in November 2017. Admissions Mot. at 14 (Admission No. 3); Hr'g Tr. at 14, 30; and

- Villavicencio resided at the Daglow Property. Admissions Mot. at 14 (Admission No. 1).

Where did the LLC get the funds to buy the properties it owns? To answer that question, some history is in order. Villavicencio worked as an emergency-medicine physician for Premier Medical Services for several years. Hr'g Tr. at 32. One of the employment benefits that Premier offered was an IRA to which Villavicencio contributed. *Id.* When Premier was bought out, on the advice of his financial advisor—Broad Financial—Villavicencio rolled over the funds in the Premier IRA to the [self-directed individual retirement account ("SEP IRA")]. The SEP IRA was administered by Madison Trust Company, the custodian of the account. *Id.* at 32, 37. Villavicencio explained that "[t]here was professional management of the [SEP] IRA at Premier and [he] did not concern [him]self with it. But when [Premier was bought out], [he] wanted to be able to direct his own retirement account." *Id.* at 32–33.

After establishing the SEP IRA, Villavicencio made the decision to use the funds it held to invest in real estate. So back in March 2017 Villavicencio withdrew the $243,537.67 on account at Madison Trust, and transferred some of the withdrawn funds to the LLC. Admissions Mot. at 15 (Admission Nos. 8 and 9); Hr'g Tr. at 17–18. He deposited $199,667.91 of the funds withdrawn from the SEP IRA into a bank account at Fifth Third Bank.[2] Hr'g Tr. at 19. Villavicencio then used those funds to purchase properties in the name of the LLC. *Id.* at 22, 26. As of the Petition Date, there was less than $1,000 in the Fifth Third Bank account, with most of the funds having been used to purchase real estate or make payments on the land contract for the Daglow Property. Admission Motion at 15 (Admission No. 5); [Status Conference Transcript (Doc. 98) ("Status Conf. Tr.")] at 19.

. . . . After making several amendments to [his bankruptcy] schedule, Docs. 54 and 76, Villavicencio settled on, among others, two exemptions in property described as "Madison Trust (JRV SEPIRA LLC)," which he

---

[2] When asked what happened to the difference between the $243,537.67 withdrawn from the SEP IRA and the $199,667.91 deposited into the Fifth Third account, Villavicencio testified that he could not recall. Hr'g Tr. at 19.

3

valued at $240,000.[3] Doc. 76 at 13. First, Villavicencio claimed an exemption of $240,000 under § 2329.66(A)(10)(c) of the Ohio Revised Code, *id.* (Amended Schedule C) at 13, which grants an exemption in a debtor's individual retirement account. Second, he claimed Madison Trust (JRV SEPIRA LLC) exempt under Ohio's homestead exemption, presumably because he resides at one of the properties held by the LLC—the Daglow Property.[4] The homestead exemption afforded by Ohio Revised Code § 2329.66(A)(1)(b) provides that a debtor may exempt his interest, up to the statutory limit of $145,425, in "one parcel or item of real or personal property that the person or a dependent of the person uses as a residence." Ohio Rev. Code § 2329.66(A)(1)(b). Thus, the second exemption Villavicencio claimed for the Madison Trust (JRV SEPIRA LLC) was in the amount of $145,425. Doc. 76 (Amended Schedule C) at 13.

As stated above, the Trustee objected to both exemptions. According to the Trustee, "[p]roperty of the LLC, including the Daglow [Property], is the interest of the LLC" rather than Villavicencio, and he therefore "lacks the requisite interest in the Daglow [Property] to claim" an exemption under Ohio Revised Code § 2329.66(A)(1)(b). Doc. 82 (Trustee's Obj.) at 6. As for the IRA exemption claimed under Ohio Revised Code § 2329.66(A)(10)(c),[5] the Trustee claims that Villavicencio's use of the Daglow Property as his personal residence was a prohibited transaction under the laws governing individual retirement accounts. The Trustee's argument on that score distills to three points:

- "Under IRA guidelines, when an owner of an individual retirement account engages in a prohibited transaction, the

---

[3] At the status conference the parties agreed that the $240,000 value of the LLC stated in the bankruptcy schedules was Villavicencio's estimated value of the real property owned by the LLC on the Petition Date. Status Conf. Tr. at 6, 19.

[4] As stated, the LLC is purchasing the Daglow Property from Joseph Miccio on a land contract recorded with the Franklin County Recorder in November 2017.

[5] Villavicencio originally claimed an exemption in the SEP IRA under § 2329.66(A)(10)(b) of the Ohio Revised Code, Doc. 1 at 19, which permits debtors to exempt their right to receive a payment or other benefit under a pension, annuity, or similar plan or contract. Villavicencio filed an amended Schedule C the day before the hearing to claim an exemption under § 2329.66(A)(10)(c), Doc. 76 at 13, which allows debtors to exempt their interests in individual retirement accounts. In the amended Schedule C, Villavicencio also, for the first time, claimed an exemption in the Daglow Property under § 2329.66(A)(1)(b)—the Ohio homestead exemption. *Id.* The parties agreed that the hearing could go forward despite Villavicencio's claiming the exemptions under §§ 2329.66(A)(10)(c) and 2329.66(A)(1)(b) on the eve of the hearing. Hr'g Tr. at 5–8.

4

- account ceases being a retirement account as of the first day of the year of the prohibited transaction."

- "As a result of using the Daglow [Property] as the Debtor's personal residence, the [SEP] IRA ceased being a retirement account as of January 1, 2017."

- Thus, on the Petition Date "[t]here [was] no retirement account to which the claimed exemption may apply."

Doc. 55 (Trustee's Obj.) at 3.

Villavicencio and his counsel conceded during the hearing that, in managing his SEP IRA, he violated Internal Revenue Service regulations that must be obeyed for an IRA to maintain its tax-exempt status. Hr'g Tr. at 10, 34. Although he admitted engaging in "transactions" violative of IRS rules, *id.* at 34, only one such transaction was identified at the hearing. That "transaction" was Villavicencio's residing at the Daglow Property, one of the investment properties held—through the LLC—by the SEP IRA. Despite that violation, Villavicencio asserts that he may still exempt the SEP IRA because Ohio Revised Code § 2329.66(A)(10)(g) provides a safe harbor. Hr'g Tr. at 12. This provision states that interests in retirement plans and the like will be exempt even if they fail to satisfy applicable law if the failure was due to "an error made in good faith." Ohio Rev. Code § 2329.66(A)(10)(g). . . .

The Trustee then filed a separate objection to the homestead exemption Villavicencio claimed under Ohio Revised Code § 2329.66(A)(1)(b). Doc. 82 (Trustee's Obj.).[6] He also filed a motion (Doc. 84), which was not opposed by Villavicencio, requesting that the Court take judicial notice in accordance with Rule 201 of the Federal Rules of Evidence of the record of two adversary proceedings: Adv. Pro. No 19-2097, *Coward v. Villavicencio* ("Coward Adversary Proceeding") and Adv. Pro. No. 19-2140, *McDermont v. Villavicencio* ("McDermott Adversary Proceeding").

Bankruptcy Opinion at 489–92.

The Bankruptcy Judge then explained that the filing of a petition for relief under the Bankruptcy Code creates a bankruptcy estate that includes "all legal or

---

[6] The Trustee's objection to Villavicencio's claimed homestead exemption prompted these filings: (1) Villavicencio's response (Doc. 87); (2) Trustee's reply (Doc. 88); and (3) Trustee's supplement to his objection (Doc. 92).

5

equitable interests of the debtor in property as of the commencement of the case." *Id.* at 492 (citing 11 U.S.C. § 541(a)(1)). "Property of the estate" may be sold by the trustee after notice and a hearing, 11 U.S.C. § 363(b)(1), but to keep the trustee from selling the property, a debtor may claim the property as "exempt." *Id.; see also Rousey v. Jacoway,* 544 U.S. 320, 325 (2005) ("To help the debtor obtain a fresh start, the Bankruptcy Code permits him to withdraw from the estate certain interests in property, such as his car or home, up to certain values." (citations omitted)).

"As a resident of Ohio, Villavicencio may, for the most part, claim only the exemptions available under Ohio law," the Bankruptcy Judge noted. Bankruptcy Opinion at 492–93 (citing Ohio Rev. Code § 2329.662). And as for the applicable burden shifting framework, the Bankruptcy Court explained:

> "There is a *prima facie* presumption that an exemption claimed by a debtor is proper." *In re Bellisari*, 554 B.R. 440, 443 (Bankr. S.D. Ohio 2016). Parties in interest, such as the Trustee, may object to a claimed exemption. The objector bears the burden of proving, by a preponderance of evidence, that the debtor is not entitled to the exemption. *Id.* at 443–44. If the objecting party introduces evidence sufficient to rebut the *prima facie* validity of the exemption, then the burden shifts to the debtor to show that the exemption is proper. *Id.* at 444. As to both exemptions at issue, the Trustee has met his initial burden and Villavicencio has failed to show that the exemptions are proper.

Bankruptcy Opinion at 493.

With respect to the homestead exemption, the Bankruptcy Court found that Mr. Villavicencio did not have an interest in the Daglow Property; the LLC did through its land contract with Mr. Miccio. *Id.* The Bankruptcy Appellate Panel for

6

the Sixth Circuit previously held the homestead exemption is unavailable in such circumstance. *Id.* (citing *In re Breece*, No. 12-8018, 2013 WL 197399, at *9 (B.A.P. 6th Cir. Jan. 18, 2013)).

As to the IRA exemption under Ohio Revised Code § 2329.66(A)(10)(c), the Bankruptcy Court held that Mr. Villavicencio constituted a "fiduciary" who had authority and control over the management and disposition of the assets in the SEP IRA, and, therefore, also a "disqualified person," *id.* (citing 26 U.S.C. §§ 4975(e)(2)(A), (e)(3)(A)); and he had used the "income or assets of the plan" to engage in a "prohibited transaction" under the Internal Revenue Code by using the Daglow Property as his personal residence, *id.* (citing 26 U.S.C. § 4975(c)(1)(D)). That "prohibited transaction" caused the SEP IRA to lose its tax-exempt status as an IRA. *Id.* (citing 26 U.S.C. § 408(e)(2)(A)). Because the SEP IRA lost its tax-exempt status under the IRC, it likewise lost its exempt status under § 2329.66(A)(10)(c). *Id.* at 495.

Mr. Villavicencio admitted that he engaged in a prohibited transaction, but argued Ohio Revised Code § 2329.66(A)(10)(g) nevertheless saved his claimed exemption because he made an error "in good faith." *Id.* That provision states:

> [a] person's interest in any plan, program, instrument, or device described in divisions (A)(10)(a) to (e) of this section shall be considered an exempt interest even if the plan, program, instrument, or device in question, due to an error made in good faith, failed to satisfy any criteria applicable to that plan, program, instrument, or device under the "Internal Revenue Code of 1986[.]"

Ohio Rev. Code § 2329.66(A)(10)(g). With no decision from any court interpreting § 2329.66(A)(10)(g), the Bankruptcy Court examined *In re Bauman*, which

7

construed a similar Illinois statue. Bankruptcy Opinion at 495 (citing No. 11 B 32418, 2014 WL 816407 (Bankr. N.D. Ill. Mar. 4, 2014)). The *Bauman* Court found that the debtor had operated his pension plan and trust in a manner that caused it to lose its tax-exempt status "not from any wrongful intent, but because he knew no better." *Bauman*, 2014 WL 816407, at *18. But "[i]nattention will not do." *Id*. Remaining "blissfully ignorant . . . with complete indifference" to the governing law cannot constitute good faith. *Id*.

The Bankruptcy Court found the *Bauman* Court's reasoning persuasive and Mr. Villavicencio's management of the SEP IRA analogous to Mr. Bauman's management of his pension plan and trust. Bankruptcy Opinion, at 496–97 ("Villavicencio paid no heed to IRS requirements governing tax-exempt status"). The Bankruptcy Judge also concluded that this result squared with the purpose of § 2329.66(A)(10)(g), which was "designed to 'protect debtors from technical errors made by plan draftsmen or administrators'" and federal law governing individual retirement accounts. *Id*. at 497 (citing and quoting D. Bowen Loeffler & John E. Sullivan, III, *Ohio's Quiet Revolution: The Ohio Asset Management Modernization Act of 2012*, 23 No. 3 Ohio Prob. L.J. NL 2 (Jan./Feb. 2013) and citing *Ellis v. Comm'r*, 787 F.3d 1213, 1216 (8th Cir. 2015); 26 U.S.C. § 4975(c)(1)(D), (E)).

Finally, the Bankruptcy Court concluded that having found § 2329.66(A)(10)(g)'s good-faith savings provision did not apply, it "need not weigh the evidence the Trustee offers to establish bad faith on Villavicencio's part." *Id*. It took judicial notice of the Coward and McDermont Adversary Proceedings (which

8

the Trustee offered to show bad faith) because the Trustee's motion to take judicial notice was unopposed, but reasoned that although the Proceedings showed Mr. Villavicencio was "guilty of serious misconduct," they did not show he "engaged in the transaction prohibited by the Internal Revenue Code—living at the Daglow Property—in bad faith or to defraud creditors." *Id.* In fact, the Bankruptcy Court explained, "Villavicencio's decision to live at the Daglow Property did not stem from some nefarious scheme, but instead from his failure to become familiar with the IRS rules governing individual retirement accounts." *Id.*

## IV. ANALYSIS

The statements argued in Mr. Villavicencio's brief are as follows:

1. The Trustee committed abuse of discretion and plain error under the "burden of proof" standard of Bankruptcy Rule 4003(c).

2. The Bankruptcy Trustee did not provide the Appellant with adequate opportunity to provide dispositive evidence.

3. The Bankruptcy Trustee appeared to assume bad faith and also allowed irrelevant prior acts by the Appellant to color the Court's opinion.

(Appellant Br., ECF No. 11, PageID 146.) The Court addresses each argument in turn.[7]

### A. The Bankruptcy Court properly applied Federal Rule of Bankruptcy 4003(c).

Mr. Villavicencio argues the Bankruptcy Court improperly applied the burden-shifting framework associated with objections to exemptions. (Appellant Br.,

---

[7] The Court will assume Mr. Villavicencio means the Bankruptcy Court when he references "the Trustee" in his three arguments.

9

PageID 156–59.) The Trustee counters that the Bankruptcy Court did not err in applying the burden of proof under Bankruptcy Rule 4003(c) and the caselaw cited by Mr. Villavicencio does not apply in a bankruptcy proceeding. (Appellee Br., PageID 177–79.)

Federal Rule of Bankruptcy Procedure 4003(c) provides: "In any hearing under this rule, the objecting party has the burden of proving that the exemptions are not properly claimed. After hearing on notice, the court shall determine the issues presented by the objections." The Trustee must produce evidence to rebut "the *prima facie* effect of the claim of exemption" and if the Trustee does so, the burden shifts back to the debtor to "show that the exemption is in fact proper."[8] *In re Bailey,* 464 B.R. 61 (Table), 2011 WL 834016, at *8 (B.A.P. 6th Cir. 2011) (citing *Lester v. Storey (In re Lester)*, 141 B.R. 157, 161 (S.D. Ohio 1991)).

Mr. Villavicencio references a number of standards that do not apply here making his related arguments are unpersuasive. (See Appellant Br., PageID 152 (discussing plain error standard under Federal Rule of Criminal Procedure 11), 154 (examining abuse of discretion standard in bankruptcy appeals when bankruptcy courts use their equitable powers under 11 U.S.C. § 105), 155 (addressing "improper potential dismissal" under Federal Rule of Civil Procedure 41)).

---

[8] Mr. Villavicencio also "respectfully proffers that neither the Trustee in hearings [n]or the court brought sufficient evidence under Bankruptcy Rule 4003 to shift the burden of proof back to Appellant." (Appellant Br., PageID 150.) Of course, the Bankruptcy Court has no burden to present evidence. *See* Fed. R. Bankr. P. 4003(c).

10

He also contends that the Trustee failed to submit to the Bankruptcy Court "relevant evidence supporting his claim [against] the SEP IRA exemption." (*Id.* PageID 157–60.) But the record is replete with evidence submitted by the Trustee including Mr. Villavicencio's testimony, exhibits, and requests for admission, which were all admitted into evidence without objection by the Appellant. *See generally* Admissions Motion, Hr'g Tr., Status Conf. Tr.; *see also* Bankruptcy Opinion at 489–92.

Mr. Villavicencio makes another argument that is difficult to follow: "The problem with this calculus is that the Appellant is not trying to exempt a portion of the SEP IRA that he improperly exempted, but the balance of it minus that financial transfer." (*Id.* PageID 159–160.) The Court interprets this as an argument that funds left over in the SEP IRA after the transfer to the LLC to purchase properties, and specifically the Daglow Property, should have been exempted under Ohio Revised Code § 2329.66(A)(10)(c). This argument fails for many reasons, but primarily because it directly contradicts what Mr. Villavicencio claimed on his amended Schedule C. (Bankr. Case No. 19-52861, Doc. 76, PageID 13 (on line 3, related to the Madison Trust (JRV SEPIRA LLC), when asked "Current value of the portion you own," Mr. Villavicencio wrote "$240,000.00," and when asked "Amount of the exemption you claim" under Ohio Revised Code Ann. § 2329.66(A)(10)(c), Mr. Villavicencio wrote "$240,000.00")); *see also* Bankruptcy Opinion at 490. Moreover, as the Bankruptcy Court explained, an IRA loses its tax-exempt status when an "individual for whose benefit [the] individual retirement account is established . . .

11

engages in any transaction prohibited by section 4975." *Id.* at 494 (citing 26 U.S.C. § 408(e)(2)(A)). This is precisely what happened when Mr. Villavicencio used the Daglow Property as his personal residence. *Id.* at 494–96.

None of Mr. Villavicencio's arguments as to Rule 4003(c)'s burden shifting framework are persuasive. As summarized in Section III, the Bankruptcy Court properly articulated and applied this standard. Bankruptcy Opinion at 493 (citing *In re Bellisari,* 554 B.R. at 443).

### B. The Bankruptcy Court provided Mr. Villavicencio with multiple opportunities to present evidence.

Mr. Villavicencio alludes to a "December 14, 2020, Zoom conference," on which his attorney "was dropped" and so he was unable to present evidence. (Appellant Br., PageID 160.) Yet a review of the transcript of the hearing reveals that Mr. Villavicencio's attorney had ample opportunity to present evidence, including presenting Mr. Villavicencio's testimony under direct examination of his counsel. (Bankr. Case No. 19-52861, Hr'g Tr. at 31–35.) Mr. Terlecky and the Court also questioned Mr. Villavicencio, and when questioning was complete, the Court informed counsel that "[i]f my questions led to any follow up that either the Trustee or [Mr. Villavicencio's counsel] have, you may inquire," to which Mr. Villavicencio's counsel replied "No, Your Honor." (*Id.* at 38.) Mr. Villavicencio's counsel was allowed to present a closing argument, at which point he brought up the §2329.66(A)(10)(g) safe harbor. (*Id.* at 43.) Because this was a new argument absent from the papers, the Bankruptcy Court gave the parties the chance to brief that issue. (*Id.* at 43–45.) Finally, before the Court concluded the hearing, it asked

12

"[a]nything further, counsel, this morning?" to which Mr. Villavicencio's counsel replied "No." (*Id.* at 45.)

The transcript does not reveal any instance in which Mr. Villavicencio or his counsel experienced technical difficulties, and Mr. Villavicencio does not provide a citation in his brief. (Appellant Br., PageID 160.) Given the above review of the Hearing Transcript, Mr. Villavicencio's argument is entirely without merit.

### C. The Bankruptcy Court did not err by taking judicial notice of related proceedings.

Mr. Villavicencio argues that the Bankruptcy Court erred when it took judicial notice of the Coward and McDermott Adversary Proceedings and concluded that the Proceedings "show[] that Villavicencio is guilty of serious misconduct." (Appellant Br. 160–63) (citing Bankruptcy Opinion at 497). But Mr. Villavicencio failed to oppose the Trustee's motion to take judicial notice, so the issue is not properly before this Court on appeal. *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 552 (6th Cir. 2008) (argument not raised before the trial court is waived on appeal).

### V. CONCLUSION

Accordingly, the Bankruptcy Opinion is **AFFIRMED**, and the appeal is **DISMISSED**.

**IT IS SO ORDERED.**

/s/ Sarah D. Morrison
**SARAH D. MORRISON**
**UNITED STATES DISTRICT JUDGE**

13